IN THE DISTRICT COURT OF ADAIR COUNTY
STATE OF OKLAHOMA

JULIE HUDGINS, )
 )
    Plaintiff, )
 )
v. ) Case No.: CJ-2016-35
 ) Judge: Brown
STILWELL AREA DEVELOPMENT )
AUTHORITY, a public trust; )
BILL GARRETT, in his individual )
capacity; ROSS ROYE, in his )
Individual capacity; MARILYN )
HILL-RUSSELL, in her individual )
capacity; )
 )
    Defendants. )

## PETITION

**COMES NOW**, Julie Hudgins ("Plaintiff"), by and through her attorneys of record Riggs, Abney, Neal, Turpen, Orbison & Lewis, P.C., for her Petition against Defendants Stilwell Area Development Authority, Bill Garrett, Ross Roye, and Marilyn Hill-Ross, alleges and states as follows:

### PARTIES, JURISDICTION AND VENUE

1. Plaintiff Julie Hudgins is an individual residing in Adair County, State of Oklahoma.

2. Defendant Stilwell Area Development Authority ("SADA") is a public trust established pursuant to Okla. Stat. tit. 60 Section 176, et seq. for the purpose of financing, operating, constructing and administering public works, improvements or facilities, and for any other statutorily enumerated public purpose.



3. Upon information and belief, Defendant Bill Garrett is an individual residing in Adair County, State of Oklahoma. Garrett is the Chairman of the Board of Trustees for the SADA. Garrett is subject to suit in both his official and individual capacities.

4. Upon information and belief, Ross Roye is an individual residing in Adair County, State of Oklahoma. Roye is a member of the Board of Trustees for the SADA. Roye is subject to suit in both his official and individual capacities.

5. Upon information and belief, Marilyn Hill-Russell is an individual residing in Adair County, State of Oklahoma. Hill-Russell is a member of the Board of Trustees for the SADA. Hill-Russell is subject to suit in both her official and individual capacities.

6. The events that give rise to these causes of action arose in Adair County, State of Oklahoma.

7. This Court has jurisdiction of the subject matter of this controversy and the parties to this action and venue is appropriate in Adair County, State of Oklahoma.

## STATEMENT OF FACTS

8. At all relevant times, Ms. Hudgins was employed as the General Manager of the SADA, which was a position expressly provided for in the SADA's Trust Indenture.

9. As the general manager, Ms. Hudgins had certain protections with regard to her job provided in both the policies and procedures adopted by the SADA and the Trust Indenture.

10. On November 30, 2015, under the pretext of a reduction in force, Ms. Hudgins' was not only terminated at the General Manager, but the actions taken by the three board members that evening effectively eliminated the position of General Manager under the guise of restricting, without amending, the Trust Indenture.

2

11. At no point was there any agenda or vote by the SADA Board of Trustees to amend the Trust Indenture which would have authorized the elimination of the General Manager position, making the action of eliminating the General Manager position contrary to the governing documents for SADA.

12. On or about October 8, 2015, approximately one and a half months prior to her termination, Bill Garrett placed an agenda item on the SADA Board of Trustees' agenda for purposes of convening a purported Executive Session to discuss the performance of Ms. Hudgins, and he stated during such purported Executive Session that it was his intention to terminate Ms. Hudgins which was his longstanding intention since prior to becoming the chair. Contrary to the stated purpose of the Executive Session, Ms. Hudgins was grilled by SADA's attorney as to issues almost entirely unrelated to her job or her performance. The Executive Session was orchestrated by Mr. Garrett and SADA's attorney. Despite having SADA's legal counsel lead the charge during the Executive Session, Ms. Hudgins was not afforded the opportunity to have any notice about the subject matter that she was ultimately grilled about and was deprived access to counsel, despite the fact that SADA's counsel was the primary oral examiner during this unlawful Executive Session. No action was taken against Ms. Hudgins or her employment during that meeting, presumably because there was no basis for any action to be taken against her.

13. After this failed attempt, Bill Garrett, Ross Roye, and Marilyn Hill-Russell, voted in early November to change the SADA policies to allow the General Manager to be terminated for no cause at all.

14. The Board provided no additional consideration or any remuneration of any kind to Ms. Hudgins with regard to her employment for this drastic policy change which materially changed the nature and character of her employment with SADA.

3

15. Ms. Hudgins discovered actions taken by Bill Garrett, which were either unlawful, contrary to SADA's interests, or for the purpose of promoting his own personal economic interests, including his demand that all employees be drug tested and his efforts to view the results of such unlawful drug testing, contrary to the established policies and procedures of the SADA Indenture.

16. Mr. Garrett's actions related to the drug testing exposed SADA to significant liability. This liability was mitigated by Ms. Hudgins, who refused to release the drug test results to Mr. Garrett. Furthermore, Ms. Hudgins' actions prevented further violation of employees' rights by Mr. Garrett.

17. Ms. Hudgins questioned SADA trustees as to the payment by SADA and approval by SADA for the construction of a sewer line to a property Mr. Garrett had a personal financial and ownership interest in, as this was a flagrant violation of his duties owed to SADA and its beneficiary. In fact, the trustees, including Defendants Garrett, Roye, and Hill-Russell, knew this was a violation due to specific training provided to the board on such issues of conflict of interest. Defendant Hill-Russell also expressed concern to Ms. Hudgins about the types of actions which were being led by Mr. Garrett, including the vote relating to the sewer line and violation of the SADA policies, and that these were going to result in SADA and the trustees being sued for such actions.

18. Mr. Garrett has been openly hostile toward Ms. Hudgins both prior to his appointment to the SADA board as well as during his time serving as a Trustee. His hostility went even as far as openly threatening Ms. Hudgins with physical violence, stating he would hit her had she been a man.

4

19. His hostility toward Ms. Hudgins was once again expressed in response to the events surrounding the unlawful drug testing and other matters when Garrett was questioned by Ms. Hudgins about inappropriate and unlawful conduct being pressed by Garrett.

20. He further stated to other SADA employees that he would make sure Ms. Hudgins was terminated once he was appointed to the SADA board. Defendants Garrett and Hill-Russell also were of the belief that a letter submitted to SADA by the "Friends of Stillwell Utilities" was authored by Ms. Hudgins, which was addressed to Defendant Hill-Russell, and directly mentioned the violation of policy, including bidding policies, and tyrannical leadership by Defendant Garrett.

21. Pursuant to Trust Indenture and Oklahoma law regarding public trusts, Garrett has absolutely no authority to act, absent an affirmative vote of the majority of the SADA's Board of Trustees, yet has been operating SADA as though he has such authority, which is not provided in the Trust Indenture.

22. Despite this lack of authority and power, he has repeatedly tried to usurp Ms. Hudgins' duties as the general manager of the SADA and micromanage the SADA.

23. Garrett conspired with other members of the SADA board, specifically, Ross Roye and Marilyn Hill-Russell, to effectuate his unlawful motives

24. As a result of Ms. Hudgins exposing these matters, as well as other improprieties occurring at the SADA, the Plaintiff was retaliated against, publicly and privately harassed, and has had her employment threatened, and ultimately terminated.

25. Further, Ms. Hudgins was denied due process with regard to her termination, as the agenda item provided Ms. Hudgins with no notice that her position would be terminated under the guise of a reduction in force.

5

26.     The motions presented during the meeting, were prepared in advance of the meeting, and specifically identified the persons/positions that would be terminated, however this information was not included in the publicly posted agenda, nor was it provided to the employees or public in advance of the meeting.

27.     She was not afforded an opportunity to have any discussion about this purported restructuring of SADA, despite the fact that she was the general manager and that her own employment was at issue.

28.     In December of 2015, Ms. Hudgins requested an opportunity to address the decision of the SADA Board of Trustees to terminate her employment and lack of due process afforded to her as part of that termination during a meeting of the SADA Board of Trustees. To date, Ms. Hudgins has been denied such an opportunity to be heard on the issues surrounding her unlawful termination.

29.     The purported reduction in force and the necessity for terminating certain employees is clearly pretextual. At least one of the employees who was subjected to the reduction in force has been re-employed by SADA, and additional persons have been retained as either employees or consultants for SADA and it is believed that any cost savings by the elimination of Ms. Hudgins have been far exceeded by the cost of hiring such new employees and consultants.

30.     Garrett, acting in concert with Ross Roye and Marilyn Hill-Russell, have wrongfully terminated Ms. Hudgins in violation of Oklahoma public policy and in violation of her due process rights.

31.     Their actions were either intentionally or negligently done.

## FIRST CAUSE OF ACTION: RETALIATORY DISCHARGE OF EMPLOYEE IN VIOLATION OF CLEARLY ESTABLISHED PUBLIC POLICY OF OKLAHOMA

32. Plaintiff incorporates and re-alleges Paragraphs 1-31 above.

33. Julie Hudgins, while general manager of SADA, exercised her constitutionally protected right to engage in free speech on a matter of public concern as detailed above.

34. SADA, acting though the Board and its trustees, terminated Hudgins' employment. In doing so, these individuals acted under the color of state law.

35. Ms. Hudgins, in exercising her right to engage in free speech, was commenting on matters of clearly established public concern, specifically violations of SADA's policies and trust indenture.

36. The Board's action to terminate Ms. Hudgins' employment on November 30, 2015, was not supported by good and sufficient cause and constituted a breach of Oklahoma's clearly established public policy that requires the trustees of SADA, a public trust, to act in the best interests of the trust and its beneficiaries, people of Stilwell and protects employees who report violations of such a requirement.

37. As a result of violation of clearly established public policy, Ms. Hudgins has suffered actual damages in excess of $10,000, and she is entitled to recover those damages, with interest, along with punitive damages, all costs, including reasonable attorney fees, and interest.

## SECOND CAUSE OF ACTION: VIOLATION OF 42 U.S.C. § 1983, SPECIFICALLY PLAINTIFF'S RIGHT TO DUE PROCESS AGAINST DEFENDANTS

38. Plaintiff incorporates and re-alleges Paragraphs 1-37 above.

39. Ms. Hudgins exercised her federally protected Constitutional right to free speech, expressing her concern for the violations of SADA policies and the trust indenture.

40. Bill Garrett, Ross Roye, and Marilyn Hill-Ross, all acting in their individual capacities, terminated Ms. Hudgins' employment and/or caused her termination, and refused to

7

compensate Ms. Hudgins pursuant to her appointment, despite the fact that SADA has admitted through statements made by SADA's legal counsel on SADA's behalf that there were no issues related to Ms. Hudgins' performance or any other issues related to her employment which gave rise to her termination.

41. These Defendants in their individual capacities are "persons" pursuant to 42 U.S.C. § 1983.

42. Each of these Defendants knew, or should have known, that the act of termination Ms. Hudgins, based upon the exercise of her Constitutionally protected right to free speech and the rights afforded her to continued employment and to due process, was an unlawful employment practice, depriving Ms. Hudgins of her rights secured by the U.S. Constitution, and as such are liable for those actions in their individual capacities, pursuant to 42 U.S.C. § 1983.

43. The conduct of these Defendants was malicious, reckless, and unconstitutional, which gives rise to personal liability for such actions of state officers acting in their individual capacities.

44. As a result of the unlawful employment practice of these four Defendants, the Plaintiff has suffered actual damages in excess of $10,000, and she is entitled to recovery of those damages, with interest, along with punitive damages, all costs, including reasonable attorney fees, and interest from these state officers personally.

### THIRD CAUSE OF ACTION: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

45. Plaintiff incorporates and re-alleges paragraphs 1-45 above.

46. Defendants' actions and conduct were intentional and reckless, and the same was of an extreme and outrageous nature. Furthermore, such actions went beyond all possible bounds of decency and would be considered atrocious and utterly intolerable in a civilized society.

47.  Ms. Hudgins suffered and experience emotional distress because of Defendants' actions and said distress was severe.

48.  Defendants' actions and conduct were reckless, egregious, and malicious entitling Ms. Hudgins to an award of punitive damages from them.

49.  Premises considered, the Plaintiff Hudgins prays the Court for Judgment against Defendants and award her actual damages in excess of $10,000, punitive damages, prejudgment and post-judgment interest, reasonable attorney fees, and any other relief deemed just and equitable.

## FOURTH CAUSE OF ACTION: CIVIL CONSPIRACY

50.  Plaintiff incorporates and re-alleges paragraph 1-49 above.

51.  Defendants and other persons who may become known upon the completion of discovery, acted in concert to commit the unlawful acts and omissions against Ms. Hudgins.

52.  Defendants and other persons who may become known upon the completion of discovery, were in agreement to inflict the aforementioned wrongs, and other unlawful acts and omissions known or will be revealed over the course of discovery.

53.  Defendants and other persons who may become known upon the completion of discovery, committed numerous overt acts in furtherance of their conspiracy, including threatening statements about Ms. Hudgins' personal safety and job security.

54.  Ms. Hudgins was damaged as a result of the foregoing acts and omissions.

55.  As a result of Defendants' actions, Plaintiff has suffered actual damages in excess of $10,000, and she is entitled to recovery of those damages, with interest, along with punitive damages, all costs including reasonable attorney fees, and interest.

**FIFTH CAUSE OF ACTION: NEGLIGENCE**

56. Plaintiff incorporate and re-alleges Paragraphs 1-55 above.

57. Defendants owed a legal duty to Ms. Hudgins to properly supervise and monitor its employees, agents, representatives, officers and other persons responsible for carrying out the business of SADA.

58. Defendants owed a legal duty to the Plaintiff not to conduct itself in such a manner to not threaten, intimidate, create fear, or otherwise impose terror on employees such as the Plaintiff.

59. Defendants either acquiesced, endorsed, or actively participated in the aforementioned acts and omissions committed by Defendants.

60. Alternatively, Defendants are vicariously, by the laws of agency, and/or by the doctrine of *respondeat superior*, liable for the acts committed by the Defendants.

61. Defendants breached these duties, and others to be discovered upon the completion of discovery.

62. As a direct and proximate result of Defendants' breach of the aforementioned duties, Ms. Hudgins suffered personal injuries, compensable damages, and other particulars to be proven at the conclusion of discovery and trial.

63. As a result of Defendants' actions, Plaintiff has suffered actual damages in excess of $10,000, and she is entitled to recovery of those damages, with interest, along with punitive damages, all costs including reasonable attorney fees, and interest.

## SIXTH CAUSE OF ACTION: DECLARATIVE AND INJUNCTIVE RELIEF FOR VIOLATION OF OPEN RECORDS ACT

64. Plaintiff incorporates and re-alleges Paragraphs 1-58 above.

65. On or about January 13, 2016, Plaintiff, through her counsel, presented to counsel for the SADA a written request to make specified public records available for inspection pursuant to the Oklahoma Public Records Act. A copy of this request is attached hereto as **Exhibit A**.

66. The written request seeks disclosure and inspection of documents of and relating to the actions taken by the SADA trustees between June 2015 to January 2016.

67. On or about January 13, 2016, counsel for SADA sent an email to Plaintiff's counsel, stating, "Your deadline of two weeks is not realistic for such a burdensome request, the purpose of which is obviously to harass and bully my client."

68. Later, Counsel for SADA indicated that the majority of the requested documents were available on the SADA website. This was not true, as only a very limited selection of documents is available on the SADA website, amounting to a handful of agendas.

69. As of the date of filing this Petition, access to such records has not been provided to Plaintiff or Plaintiff's counsel.

70. The interests of Plaintiff and the public outweigh any reason for the denial in this instance. Plaintiff is the victim of numerous unlawful actions by Defendants after she exercised her Constitutionally protected right to free speech.

71. Pursuant to 51 O.S. § 24A.8(B), Plaintiff requests that the Court enter an order declaring the interests of Plaintiff and the public outweigh any reason for the denial of the requested records.

72. Pursuant to 51 O.S. § 24A.17(B), Plaintiff requests injunctive relief be granted via judicial order for the immediate release and inspection of all records described in Plaintiff's

11

Exhibit A under the custody and control of Defendants, as well as a log or list of all records, if any, that have been removed from Defendant's control or destroyed following receipt of Plaintiff's written request for inspection.

73. Plaintiff further prays that the Court provide declaratory relief by judicially recognizing Plaintiff's right to access the sough public records within the possession or control of Defendant, unless exempted from release by a specific provision of the Oklahoma Open Records Act.

74. Plaintiff further prays that the Court grants Plaintiff a judgment for reasonable attorney fees in this action, as Plaintiff is entitled by 51 O.S. § 24A.17(B)(2), upon successful determination or action on the merits.

## **CONCLUSION**

**WHEREFORE**, premises considered, the Plaintiff, Julie Hudgins, respectfully requests judgment be entered against Defendants and prays for the following relief:

a. Actual damages in an amount in excess of $10,000.00;

b. Punitive damages in an amount in excess of $10,000.00;

c. Reinstatement to the General Manager position;

d. Declaration of violation of the Oklahoma Open Records Act;

e. Production of the requested public records;

f. Attorney fees, expenses and costs incurred in this matter;

g. Statutory interest.

h. Other equitable relief available as this Court deems just and necessary.

Respectfully submitted,

By: _____

Kristopher E. Koepsel, OBA #19147
Brenna N. Wiebe, OBA #32537
RIGGS, ABNEY, NEAL, TURPEN,
ORBISON & LEWIS, PC
502 West 6th Street
Tulsa, Oklahoma 74119-1010
918-587-3161 (telephone)
918-587-9708 (facsimile)
kkoepsel@riggsabney.com
bwiebe@riggsabney.com

*Attorneys for Plaintiff*